IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

RICHARD LAVIGNE-SOUCIE
on behalf of himself and all others similarly situated,

                Plaintiff,

v.

BLUE MAX TRANSPORT, INC. and
BLUE MAX TRUCKING, INC.,

                Defendants.

No.: 3:23-cv-498

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Richard Lavigne-Soucie ("Plaintiff") on behalf of himself and a class of those similarly situated ("Other Similarly Situated Employees"), by way of Complaint against Blue Max Transport, Inc. and Blue Max Trucking, Inc. ("Defendants"), by and through his counsel alleges as follows:

## NATURE OF THE ACTION

1. This is a class action for the recovery by Plaintiff and Other Similarly Situated Employees of the Defendants, as a single employer, of damages in the amount of 60 days' pay and ERISA benefits by reason of Defendants' violation of the Plaintiff's rights under the Worker Adjustment and Retraining Notification Act of 1988 29 U.S.C. §§ 2101-2109 *et. seq.* (the "WARN Act"). Although the Plaintiff and the Other Similarly Situated Employees were nominally employed by Defendant, Blue Max Transport, Inc.

("BM Transport"), pursuant to the WARN Act's single employer rule, Blue Max Trucking, Inc. ("BM Trucking") was also the Plaintiff's and the Other Similarly Situated Employees' "Employer" until they were terminated as part of, or as a result of, a Mass Layoff or Mass Layoffs and/or a Plant Closing ordered by Defendants on or about December 30, 2022 and thereafter. The Defendants violated the WARN Act by failing to give the Plaintiff and the Other Similarly Situated Employees of the Defendants at least 60 days' advance written notice of termination, as required by the WARN Act. As a consequence, the Plaintiff and the Other Similarly Situated Employees of the Defendants are entitled under the WARN Act to recover from the Defendants their wages and ERISA benefits for 60 days, none of which has been paid.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).

3. Venue in this Court is proper pursuant to 29 U.S.C § 2104 (a)(5).

## THE PARTIES

4. Upon information and belief, at all relevant times, Defendant BM Transport is a North Carolina corporation with a facility located at 1015 East Westinghouse Blvd. Charlotte, NC 28273 (the "Facility").

5. Upon information and belief, Defendant BM Trucking is a North Carolina corporation with its principal place of business located at 1015 East Westinghouse Blvd. Charlotte, NC 28273.

6. Upon information and belief, BM Trucking created, operated and controlled BM Transport.

7. Upon information and belief, at all relevant times, Defendants each jointly maintained, owned and operated the Facility.

8. Plaintiff Richard Lavigne-Soucie was employed by Defendants, as a single employer, at the Facility until his layoff without cause on or about December 30, 2022.

9. Plaintiff and the Other Similarly Situated Employees were employed by Defendants as a single employer at the Facility until their termination without cause on or about December 30, 2022 and thereafter at which time Defendants ordered a Mass Layoff or Mass Layoffs and/or a Plant Closing of the Facility.

10. Upon information and belief, approximately 120 persons were employed at the Facility by Defendants until their termination without cause on or about December 30, 2022 and thereafter.

11. Upon information and belief, Defendants, as a single employer, owned and operated the Facility until on or about December 30, 2022 and thereafter.

12. On or about December 30, 2022 and thereafter, Defendants, as a single employer, ordered the termination of the Plaintiff's employment together with the termination of all other employees who worked at or reported to the Facility as part of a Mass Layoff or Mass Layoffs and/or a Plant Closing as defined by the WARN Act for which they were entitled to receive 60 days' advance written notice under the WARN Act.

## CLASS ACTION ALLEGATIONS – 29 U.S.C. § 2104 (a)(5)

13. Pursuant to the WARN Act, 29 U.S.C. § 2104 (a)(5), the Plaintiff maintains this action on behalf of himself and on behalf of each of the Other Similarly Situated Employees.

14. Each of the Other Similarly Situated Employees is similarly situated to the Plaintiff in respect to his or her rights under the WARN Act.

15. Defendants, as a single employer, were required by the WARN Act to give the Plaintiff and the Other Similarly Situated Employees at least 60 days' advance written notice prior to their terminations.

16. Prior to their terminations, neither the Plaintiff nor the Other Similarly Situated Employees received written notice that complied with the requirements of the WARN Act.

17. Defendants failed to pay the Plaintiff and the Other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) days following their respective terminations and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

## CLASS ACTION ALLEGATIONS RULES 23 (a) and (b)

18. The Plaintiff brings this action on his own behalf and, pursuant to the Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the Other Similarly Situated Employees who worked at the Facility and were terminated as part of or as the reasonably foreseeable result of a Mass Layoff or Mass Layoffs and/or a Plant

4

Closing ordered by the Defendants, as a single employer, on or about December 30, 2022 and thereafter ("the "Class").

19. The persons in the Class identified above ("Class Members") are so numerous that joinder of all Class Members is impracticable.

20. There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members.

21. The claims of the representative party are typical of the claims of the Class.

22. The representative party will fairly and adequately protect the interests of the class.

23. The Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

24. A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the contest of WARN Act litigation, where individual Plaintiffs and Class Members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

25. There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    (a) Whether the Class Members were employees of the Defendants who worked at or reported to the Facility;

    (b) Whether Defendants, as a single employer, terminated the employment of the Class Members without cause on their part and without giving them 60 days' advance written notice;

(c) Whether the Defendants may rely on the WARN Acts "unforeseeable business circumstances" defense.

(d) Whether Defendants failure to provide 60 days' notice should render them liable to the Class Members for 60 days' pay and benefits.

(e) Whether the Defendants constituted a "single employer" as defined by the WARN Act.

## CAUSE OF ACTION & CLAIM FOR RELIEF: VIOLATION OF THE WARN ACT, 29 U.S.C. §§ 2101, *et. seq.*

26. At all relevant times, the Defendants, as a "single employer" employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act and employed more than 50 employees at each Facility.

27. At all relevant times, each of the Defendants was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) of the WARN Act and 20 C.F.R. § 639.3(a).

## SINGLE EMPLOYER ALLEGATIONS

28. The Defendants constituted a "single employer" of the Plaintiff and the Class Members in that, among other things:

*Common Ownership*

*(a)* Upon information and belief, in approximately 1984, BM Trucking was founded for the purpose of supplying dump truck service and equipment.

*(b)* Upon information and belief, in approximately 2017, BM Trucking sought to establish a flatbed trucking division, and therefore founded BM Transport.

6

*(c)* Upon information and belief, BM Trucking created, operated and controlled BM Transport.

*Common Directors and Officers*

*(d)* Upon information and belief, BM Transport and BM Trucking shared common officers and directors.

*(e)* Specifically, Denton Williams and Chris Bauer was the President and CFO respectively of both BM Transport and BM Trucking.

*Dependency of Operations*

*(f)* Upon information and belief, at all relevant times, BM Transport was dependent on BM Trucking for its daily operating funds which were provided either directly by BM Trucking or through financing arranged by BM Trucking.

*(g)* Upon information and belief, on numerous occasions, BM Transport and BM Trucking shared equipment and personnel.

*(h)* Upon information and belief, on the BM Trucking website, there is a page which states, "Need Flatbed Transport?" and a box underneath which says "Click Here". That link goes to the BM Transport website.

*Unity of Personnel Policies*

*(i)* Upon information and belief, at all relevant times, all of the Defendants maintained common personnel policies which were put into place by BM Trucking including payment of wages, as well as a common health care plan all of which was carried out by BM Trucking.

7

*(j)* Upon information and belief, at all relevant times, all management-level personnel decisions relating to BM Transport were made by BM Trucking.

*(k)* Upon information and belief, the decision to order a Mass Layoff or Mass Layoffs and/or a Plant Closing without providing a WARN notice was made by BM Trucking on behalf of the Defendants.

*De Facto Control*

*(l)* Upon information and belief, at all relevant times, BM Trucking maintained sole control over all critical business decisions made on behalf of the Defendants including decisions relating to Plaintiff's and the Class's employment and, specifically, the decision to shut down the Facility without providing WARN notice.

*(m)* Upon information and belief, the decision to shut down the Facility without providing proper WARN notice was made by BM Trucking on behalf of the Defendants, as a single employer.

29. On or about December 30, 2022 and thereafter, Defendants, as a single employer, ordered a Mass Layoff or Mass Layoffs and/or a Plant Closing of the Facility as those terms are defined by 29 U.S.C. § 2101(a).

30. The Plaintiff and the Class Members who were terminated by Defendants as a result of Defendants ordering a Mass Layoff or Mass Layoffs and/or a Plant Closing at the Facility on or about December 30, 2022 and thereafter were "affected employees" as defined by 29 U.S.C. § 2101(a)(5) of the WARN Act.

31. The mass layoff or mass layoffs and/or plant closing at the Facility resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Defendants' employees as well as 33% of Defendant's workforce at the Facility, excluding "part-time employees," as that term is defined by the WARN Act.

32. The Plaintiff and each of the Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

33. Pursuant to Sections 2102 of WARN and 20 C.F.R. § 639.1 - § 639.10 *et. seq.*, Defendants were required to provide at least 60 days' prior written notice of the termination or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days' prior notice was not given.

34. Defendants failed to provide at least sixty (60) days' prior notice to the Class Members of the terminations and also failed to provide notice prior to their terminations setting forth the basis for reduced notice as required by the WARN Act.

35. The Defendants failed to pay the Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation pay for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

36. As a result of Defendants' failure to pay the wages, benefits and other monies as asserted above, the Aggrieved Employees were damaged in an amount equal to the sum of the Class Members unpaid wages, accrued holiday pay, accrued vacation pay, accrued

sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the members' terminations.

## JURY DEMAND

On behalf of themselves and a class of Other Similarly Situated Employees, Plaintiff demands a trial by jury in this case.

**WHEREFORE**, the Plaintiff and Class Members demand judgment against the Defendants as follows:

a. An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions, health insurance premiums, and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act;

b. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C § 2104(a)(5), Plaintiff and the Class Members constitute a single class;

c. Interest as allowed by law on the amounts owed under the preceding paragraphs;

d. Appointment of the undersigned attorneys as Class Counsel;

e. Appointment of Plaintiff as the Class Representative and payment of reasonable compensation for his services as such;

f. The reasonable attorneys' fees and the costs and disbursements the Plaintiff incurs in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6); and

g. Such other and further relief as this Court may deem just and proper.

Respectfully submitted, this the 8th day of August, 2023.

*/s/ John F. Bloss*
John F. Bloss (NCSB No. 23947)
*/s/ Jonathan Wall*
Jonathan Wall (NCSB No. 22839)
**HIGGINS BENJAMIN, PLLC**
301 N. Elm Street, Suite 800
Greensboro, NC 27401
Phone: (336) 273-1600
Fax: (336) 274-4650
Email: bandia@greensborolaw.com

**LANKENAU & MILLER, LLP**
Stuart J. Miller*
Johnathan Miller*
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122

**THE GARDNER FIRM, P.C.**
Mary E. Olsen*
M. Vance McCrary*
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181

Cooperating Counsel for
THE SUGAR LAW CENTER FOR ECONOMIC & SOCIAL JUSTICE, a non-profit law firm

*Attorneys for Plaintiff*

---

\*  Applications for admission *pro hac vice* forthcoming.

11

Case 3:23-cv-00498-FDW-SCR   Document 1   Filed 08/08/23   Page 11 of 11